IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ATLANTIC CAPES FISHERIES,
INC.,

                    Plaintiff,

          v.

GRAVES & SCHNEIDER INTL, LLC
and MATTHEW SCHNEIDER

                    Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-11479 (JBS/KMW)

**OPINION**

APPEARANCES:

Brian McEwing, Esq.
REEVES McEWING LLP
681 Townbank Road
Cape May, NJ  08204
     Counsel for Plaintiff

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

This matter comes before the Court by way of a motion for default judgment filed by Plaintiff Atlantic Capes Fisheries, Inc. (hereinafter "Plaintiff"). (See Motion for Default Judgment (hereinafter "Pl.'s Mot.") [Docket Item 9].) Default having been entered as to both Defendants, Plaintiffs now seek default judgment under Fed. R. Civ. P. 55(b). No opposition has been filed with regards to Plaintiff's present motion.

The Court heard oral argument and received testimony and documentary evidence at a Proof Hearing held on December 7, 2018,

and supplemental submissions on December 14, 2018. After careful consideration, Plaintiff's Motion for Default Judgment will be granted in part and denied in part without prejudice for the reasons explained below. The following constitute the Court's findings of fact and conclusions of law upon Plaintiff's Motion for Default Judgment, pursuant to Federal Rule of Civil Procedure 52(a).

## II. BACKGROUND

Plaintiff filed the Complaint herein November 9, 2017, alleging that Defendants Graves & Schneider Intl, LLC and Matthew Schneider (hereinafter, collectively, "Defendants") are liable for negligence (Count I), breach of contract (Count II), violation of the New Jersey Consumer Fraud Act (Count III), common law fraud (Count IV), breach of fiduciary duty (Count V), and breach of bailment duty (Count VI). (See Complaint [Docket Item 1].) The Complaint seeks monetary damages, including "such other punitive, anticipatory, consequential and compensatory damages, and reasonable attorneys' fees and costs as this Court may deem fit and proper." (Id. at ¶¶ 61, 64, 69, 73; see also id. at ¶¶ 46, 53.)

Defendants were each personally served with process on December 8, 2017. (See Summons Returned Executed [Docket Items 5 & 6].) Neither Defendant filed an Answer or otherwise responded to

the Complaint within 21 days of service, as required by Rule 12(a), Fed. R. Civ. P., and no Defendant has done so to date.

Plaintiff filed for Entry of Default against Defendants on February 6, 2018. (See Motion for Entry of Default [Docket Item 7].) The Clerk of Court granted Plaintiff's request for Entry of Default on February 15, 2018. (See Clerk's Entry of Default, Feb. 15, 2018.)

Plaintiff's present motion was filed thereafter and sought both partial default judgment for a sum certain and the scheduling of a proof hearing with regards to other damages. (See Pl.'s Mot. [Docket Item 9].) Plaintiff served a copy of this motion upon each of the Defendants by mail [Docket Item 9-4, Certification of Service]. A courtesy copy was also sent to an attorney in Bellingham, Washington believed to represent them. [Id.] No opposition or other response to the motion has been filed.

On October 24, 2018, the Court ordered Plaintiff to submit supplementary briefing and scheduled a proof hearing. (See Memorandum Opinion and Order [Docket Item 10].) Plaintiff submitted a supplementary brief on November 14, 2018. (See Pl.'s Supp. [Docket Item 11].) On December 6, 2018, Plaintiff informed the Court that it only wishes to proceed with respect to claims for "compensatory and fraud damages." (Letter [Docket Item 14], 1.) On December 7, 2018, the Court held a Proof Hearing, at which time Plaintiff produced certain documents, which were entered into

evidence. Plaintiff further called Thorne Tasker as a witness, and the Court heard his testimony. Following the hearing, the Court granted leave to Plaintiff to file certain affidavits and supplementary briefs by no later than December 14, 2018, including the Affidavit of Ronald E. Graves [Docket Item 17-2], a supplemental brief regarding choice of law [Docket Item 17-1], and a supplemental brief regarding prejudgment interest and punitive damages [Docket Item 17-3]. Further, Plaintiff seeks an award of counsel fees and costs and submits the Affidavit of Brian McEwing, Esq., in support of such an award. [Docket Item 17-4.]

## III. STANDARDS FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. See FED. R. CIV. P. 55(b)(2); see also Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). A party seeking default judgment is not entitled to relief as a matter of right; the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, Case No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (internal quotations and citation omitted). Thus, before granting default judgment, a court must determine: (1) whether the plaintiff

produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). A court must accept as true every "well-pled" factual allegation of the complaint, but no presumption of truth applies to the plaintiff's legal conclusions or factual assertions concerning damages. Comdyne I. Inc. v. Corbin, 908 F.2d 1149 (3d Cir. 1990); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure (2d ed. 1983), § 2688, at 444. The Court addresses each element in turn.

## IV. DISCUSSION

### A. Whether Plaintiff Produced Sufficient Proof of Valid Service and Evidence of Jurisdiction

#### 1. Defendant Graves & Schneider Intl, LLC was properly served and is in default

The Complaint together with the summons were served upon Defendant Graves & Schneider Intl, LLC on December 8, 2017 at 4220 22nd Ave. W., Suite 200, Seattle, Washington 98199. (See Summons Returned Executed [Docket Item 5].) Defendant Graves & Schneider Intl, LLC has never filed an Answer to Plaintiff's Complaint, and the Clerk of Court accordingly entered default against Defendant Graves & Schneider Intl, LLC on February 15, 2018. Plaintiff's

motion for default judgment against Defendant Graves & Schneider Intl, LLC followed, to which Defendant Graves & Schneider Intl, LLC has not filed a response. (See Motion for Default Judgment [Docket Item 9].)

### 2. Defendant Matthew Schneider was properly served and is in default

The Complaint together with the summons were personally served upon Defendant Matthew Schneider on December 8, 2017 at 4220 22nd Ave. W., Suite 200, Seattle, Washington 98199. (See Summons Returned Executed [Docket Item 6].) Defendant Schneider has never filed an answer to Plaintiff's Complaint, and the Clerk of Court accordingly entered default against Defendant Schneider on February 15, 2018. Plaintiff's motion for default judgment against Defendant Schneider followed, to which Defendant Schneider has not filed a response. (See Motion for Default Judgment [Docket Item 9].)

### 3. Evidence of Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, since the parties are of diverse citizenship and the dispute involved a sum exceeding $75,000.00.

In this case, Plaintiff has alleged that Defendant Graves & Schneider Intl, LLC "is a limited liability company or similar business organization organized and operating in the State of Washington," that Defendant Schneider is a resident of the State

of Washington, and that Plaintiff is a New Jersey corporation, (see Complaint [Docket Item 1], ¶¶ 1-4), thereby satisfying the diversity of citizenship requirement. Additionally, Plaintiff is seeking a judgment against Defendants for actual damages the amount of two hundred and ten thousand dollars ($210,000.00), as well as additional statutory and punitive damages and attorney's fees and costs (see Complaint [Docket Item 1], ¶¶ 23, 46, 51, 53, 60-61, 64, 69, 73), thereby satisfying the amount in controversy requirement.

Plaintiff also alleges admiralty jurisdiction under 28 U.S.C. § 1333 due to the maritime nexus of this dispute pertaining to the sale and ownership of a commercial fishing permit which attaches to a vessel and enables that vessel and its owner (here, the Plaintiff) to engage in the permitted fishing operation; thus, admiralty jurisdiction also exists.

**B.** **Findings of Fact**

Plaintiff, Atlantic Cape Fisheries, Inc., of Cape May, New Jersey, is a large commercial fishing company operating a fleet of vessels, packing houses, and distribution centers, principally on the east coast of the United States.

Defendant Graves & Schneider Intl, LLC ("GSI") is a limited liability company having two principals, namely, Defendant Matthew Schneider of the State of Washington, and Ronald E. Graves, also of Washington, a witness herein but not a defendant.

Plaintiff Atlantic Cape Fisheries was desirous of considering the expansion of its business to the west coast waters of the United States. Toward that end, the Plaintiff's president, Daniel Cohen, recently deceased, authorized Captain Thorne Tasker to negotiate with GSI in 2006 for the purpose of finding and obtaining a civil limited license groundfish permit to allow both fishing and on-board processing of certain shellfish off the West Coast.

In 2006-2007, Defendant GSI was a well-established business in Seattle, Washington serving as a broker for such commercial fishing permits and listing them from time to time on its website, according to Captain Tasker's testimony. Captain Tasker was familiar with Defendant Matthew Schneider, but he generally worked with Ronald Graves in serving the needs of Tasker's own commercial fishing ventures over the years.

Plaintiff Atlantic Cape Fisheries entered into a contract with GSI entitled "Agreement to Purchase License Limitation Program Permit" [hereafter "Agreement," Exhibit 1] on or about October 20, 2006. Under the terms of the agreement, Plaintiff purchased the License Limitation Program Permit for Groundfish, License No. LLG3569 ("LLP Permit"), which is the subject of this lawsuit. The agreed-upon purchase price was $210,000.00 [Exhibit 1 at ¶ 1]. The signatories to the agreement were Ronald Graves on behalf of Defendant GSI and the late Daniel Cohen on behalf of Plaintiff.

Plaintiff paid the agreed-upon purchase price to GSI or its intermediary, Kim Marine Trust. Those checks are in evidence at Exhibit A, showing that the agreed-upon price of $210,000.00 was paid in full.

The Agreement also provided that the transaction would be governed by the laws of the State of Washington. [Exhibit 1 at ¶ 6].

The parties agreed to an "Amendment to the Agreement" ["Amendment," attached to Exhibit 1] on or about March 7, 2007, between GSI as the Seller and Atlantic Cape Fisheries, Inc. as the Buyer. Under the Amendment, the parties agreed that the "LLP Permit" would be held in escrow by GSI because it was possible that Plaintiff might need to assign its rights under the Agreement to a third party prior to the transfer of the LLP Permit, awaiting an interpretation of applicable guidelines from the National Marine Fisheries Service. [Amendment to Agreement at ¶ B.]

Under the Amendment to Agreement, the parties agreed that the intermediary, Kim Marine Documentation, Inc., is instructed to release the purchase price funds to the Seller, GSI. The parties agreed that the LLP Permit would be held by the Seller, GSI, which "shall not use the LLP Permit, designated vessel, pledge or transfer any interest in the LLP Permit to any party other than as directed by Buyer [Atlantic Cape Fisheries, Inc.] and shall keep the LLP Permit free and clear of all claims, liens, and

encumbrances and shall indemnify, defend, and hold Buyer, its assigns, and the LLP Permit harmless from the same." [Amendment to Agreement at ¶ 2 (emphasis added).] The Amendment to Agreement was again signed by Ronald Graves on behalf of GSI and by the late Daniel Cohen, President of Atlantic Cape Fisheries, Inc.

Thus, GSI agreed that the LLP Permit was indeed purchased and paid for by Atlantic Cape Fisheries, Inc., and GSI agreed to hold the LLP Permit pending instructions from Atlantic Cape regarding transfer of title to either Atlantic Cape Fisheries or to a designated third party. The obligation was clear and unequivocal that GSI was not entitled to use or sell or encumber plaintiff's LLP Permit, and also that GSI would follow Atlantic Cape Fisheries' instructions regarding the paperwork for transferring Atlantic Cape Fisheries' LLP Permit.

As a result of the Plaintiff's purchase of the LLP Permit, both Defendant Schneider and Mr. Graves received their respective cash distributions from GSI as their portions of the proceeds from GSI's sale of the LLP Permit to plaintiff. The records in evidence show that Schneider received $105,000 (Exhibit F; Graves Aff. ¶¶ 23-24).

The following year, on or about August 5, 2008, Mr. Cohen instructed Kim Marine that Captain Tasker would handle further discussions about the license, including instructing as to the proper titling of the license. [Exhibit B]. Captain Tasker never

instructed GSI or Schneider to dispose of the LLP Permit. It is quite clear that Schneider was aware of this transaction both as a principal in GSI and as a principal receiving a sizeable distribution from the sale. In addition, Schneider received extra monthly compensation as the bookkeeper and recordkeeper duties he performed for GSI. (Exhibit F; Graves Aff. at ¶¶ 6-8.)

Indeed, it was Matthew Schneider who performed and handled all of GSI's bookkeeping and accounting, including meeting with GSI's accountant every month, for which he received additional compensation. [Graves Aff. at ¶¶ 6,7, and 8.] Mr. Graves acknowledges that GSI was the title owner of License LLG 3569 (the LLP Permit). [Id. at ¶ 10.]

In the GSI office, this transaction was placed into its own transaction folder, and it was Matthew Schneider who maintained control of all active transaction files in his office, including this transaction. [Id. at ¶ 13.] Graves further acknowledges that he handled the negotiations for the sale of this permit to plaintiff and that he kept Matthew Schneider advised as the negotiations progressed, and Schneider was aware of the final sale price and agreed to it and the relevant documents were placed into the transaction file. [Id. at ¶¶ 15-18.]

Schneider was also aware that Graves executed the Transferor section of the LLP Permit in question, which Schneider also approved. [Id. at ¶ 20.] The physical LLP Permit was then placed

in the transaction file, with Graves' signature in the Transferor section, and this physical document as noted remained in Schneider's possession.

Graves left the GSI business, ceasing doing business as a partner and shareholder, because he had strong differences with Schneider, in or about 2007 or early 2008. [Id. at ¶¶ 3, 4, 5, and 25.]

Ronald Graves describes this particular LLP Permit as being quite valuable, because such licenses were rare and "no additional licenses of that type [were] being issued," and he expected the value would only increase after 2007 [Id. at ¶ 28.] This confirmed the testimony of Captain Tasker who indicated that the license was very unusual and therefore attractive to the Plaintiff because it permitted an opportunity for shrimp fishing in Alaskan waters and permitted processing of the catch on board, which is true of only about two percent of such permits.

Captain Tasker and the Plaintiff made the decision to let the LLP Permit sit for an extended period of time for several reasons. Captain Tasker testified that so long as such a permit is in escrow, one doesn't have to pay fees related to the permit until it is removed from escrow and assigned to a vessel; secondly, Captain Tasker indicated that the value of the permit was increasing and that it would benefit Plaintiff to hold on to the

permit for later resale or use. Captain Tasker's testimony was highly credible, and the Court accepts it.

Instead of holding the LLP Permit safely in escrow, there came a time in the year 2016 when Defendant Schneider conveyed the license to a commercial fisherman, Robert Desautel, who thereafter resold or assigned the license to Dona Martita, LLC. Plaintiff, Captain Tasker, and Mr. Graves were all unaware of this transfer when it occurred in 2016 and had no idea that GSI and Schneider sold the LLP Permit without the knowledge of the rightful owner, Atlantic Cape Fisheries. It was Captain Tasker who first became aware of the transfer when, in 2017, he was contemplating the titling of the LLP Permit. He visited and obtained printouts from the Juneau, Alaska office of the National Oceanic and Atmospheric Administration ("NOAA") for the years 2015 and 2016 [Exhibit E]. Those printouts from the NOAA website listed this specific LLP Permit as being titled to GSI as of December 2015, which was technically correct, because it had never been officially retitled to the Plaintiff. For 2016, however, the NOAA website showed that the license had been transferred to a different owner: Dona Martita LLC. When Captain Tasker discovered this indication of the 2016 transfer, he first thought it had to be an error, because Plaintiff owned the permit and because the permit had now been transferred to a significantly larger vessel than the permit would actually

authorize. He also called the NOAA office in Juneau, Alaska and confirmed the transfer to the Dona Martita.

Captain Tasker also spoke to Mr. Desautel, who had purchased the permit from Schneider. Desautel spoke with Tasker about this permit for about five minutes and acknowledged purchasing it from Schneider for a price that Desautel indicated was only $30,000.00, which Tasker does not believe because the actual permit cost $210,000 and has a considerably higher value.

Four or five months after discovering the sale, Tasker spoke with Defendant Matthew Schneider. Plaintiff had hired a lawyer on the West Coast and Tasker went to Schneider's office in Seattle and told him why he was there. Tasker asked Schneider what had happened regarding the permit transfer. Schneider first said that the permit had never been sold to Atlantic Capes. Then he blamed Ronald Graves for selling the permit to the third party. These were lies by Schneider who was well aware that Plaintiff had purchased it and was the true owner, and also well aware that he sold it to Mr. Desautel. Again, the Court fully credits Captain Tasker's testimony.

When Captain Tasker told Schneider that Plaintiff would start legal action and that Plaintiff wanted to be made whole, defendant Schneider simply said: "You can't get blood from a stone. Good luck." Captain Tasker, who did not want to be confrontational, left the meeting with those words ringing in his ears.

Captain Tasker testified that Desautel told him about Schneider's role in the 2016 sale. Desautel explained that he was originally looking for an LLP for fishing on the East Coast, and that he called Schneider who continued the commercial fishing permit brokerage business. Desautel owns a processing plant in New Bedford, Massachusetts. Desautel purchased the West Coast permit instead and told Captain Tasker: "Your problem is with Matt Schneider." Desautel said that he bought it from Schneider and believed it was Schneider's to sell.

Captain Tasker also testified he spoke with Matthew Schneider's lawyer who said that the purchase price was $30,000.00, confirming what Schneider had said to Tasker.

In his dealings with Captain Tasker, Defendant Schneider exhibited arrogance, no remorse, and shocking behavior. Schneider knowingly sold the Plaintiff's LLP to a third party. Schneider's totally unrepentant attitude, and his false attempt to deflect blame, are further aggravating circumstances that take his misconduct beyond the realm of a mere breach of contract or breach of fiduciary duty, as will be explained below.

Although there is good evidence that the value of the LLP Permit by the present time had risen to a multiple of the original $210,000.00 price due to the permit's desirability and the fact that no new permits had been created since 1998 in the West Coast fishery for groundfish, the loss to plaintiff attributed to

Schneider's actions, may well be a multiple of $210,000.00. Plaintiff, however, is seeking recovery of its original purchase price, adjusted by interest, enhanced by fraud damages and/or other punitive damages, plus attorney's fees. Plaintiff's counsel indicated Plaintiff does not seek consequential damages at this time [Docket Item 14].

Finally, since Schneider was continuing in business and continued to use the offices and the assets, including this LLP Permit, titled in the name of Graves & Schneider Intl, LLC, Defendant GSI is also deemed to have acted through its principal, Defendant Schneider. According to Captain Tasker, Defendant Schneider continues in business and presently may have approximately 100 vessels listed in its inventory in Seattle, Washington.

### C.  Conclusions of Law

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and under 28 U.S.C. § 1333 (admiralty). Any objection to venue of this case in the District of New Jersey is waived, as the Defendants were duly served and failed to interpose timely objection (or any objection) to venue, electing instead to default. 28 U.S.C. § 1406(b).

This Court has personal jurisdiction over each of the Defendants. This Court exercises "specific jurisdiction" where the cause of action is "related to or arises out of the defendant's

contacts with the forum," IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984)). The two-part test for exercising specific jurisdiction is whether the defendant has constitutionally sufficient "minimum contacts" with the forum, id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), and second "that to do so would comport with 'traditional notions of fair play and substantial justice.'" Id. (citations omitted). Since this case arises from the transaction surrounding the Agreement and the Amendment, this Court exercises specific jurisdiction. Both elements of the exercise of specific jurisdiction are met. The underlying contracts were negotiated and ratified between New Jersey and Washington. Payments came from New Jersey to Washington. The property at issue belonged to the New Jersey corporate Plaintiff. This New Jersey business property was held by the Washington Defendants who continued to have duties to obey the contracts and faithfully discharge their responsibilities owed to the New Jersey Plaintiff. Defendants' contacts with New Jersey were sufficient. Second, it does not offend fair pay or substantial justice to summon these Defendants to New Jersey to respond to this Complaint and to the default judgment motion. Since the required response by Defendants could have included a defense of lack of personal jurisdiction, but Defendants made no response, it is also clear that any objection to personal jurisdiction by

either Defendant has been waived upon default, <u>see</u> Rule 12(h)(1),

Fed. R. Civ. P. (defense of lack of personal jurisdiction is waived

by failing to make it by motion under Rule 12(b)(2) or to include

in a responsive pleading); <u>see</u> <u>also</u> 5B Wright & Miller, Federal

Practice & Procedure § 1351 at 272 <u>et</u> <u>seq.</u> (3d ed. 2004).

The dispute is governed by the laws of the State of

Washington. The parties chose to apply Washington law in their

Agreement and Amendment to Agreement (Exhibit 1). The Court applies

the New Jersey's choice-of-law rules to determine the state having

the most significant relationship to the transactions and parties.

<u>See e.g.</u>, <u>P.V. v. Camp Jaycee</u>, 197 N.J. 132, 142-43 (2008). The

general New Jersey choice-of-law paradigm is altered, however,

where the dispute arises out of a transaction governed by the

parties' choice-of-law agreement. <u>See</u> <u>e.g.</u>, <u>Instructional</u>

<u>Systems, Inc. v. Computer Curriculum Corp.</u>, 130 N.J. 324, 341

(1992). As a rule, "[o]rdinarily, when parties to a contract have

agreed to be governed by the laws of a particular state, New Jersey

courts will uphold the contractual choice if it does not violate

New Jersey's public policy, <u>id.</u> at 341. In such a case, New Jersey

applies Section 187 of the Restatement (Second) of Conflicts of

Laws, which provides that the law of the state chosen by the

parties will apply, unless either:

> (a) the chosen state has no substantial
> relationship to the parties or the
> transaction and there is no other

18

> reasonable basis for the parties' choice,
> or
>
> (b) application of the law of the chosen
> state would be contrary to a fundamental
> policy of a state which has a materially
> greater interest than the chosen state in
> the determination of the particular issue
> and which * * * would be the state of the
> applicable law in the absence of an
> effective choice of law by the parties.

Id. at 342, 614 A.2d 124 (citing Restatement (Second of Conflicts

of Law § 187); Portillo v. National Freight, Inc., 323 F. Supp. 3d

646, 651-52 (D.N.J. 2018).

In the present case, the Agreement contains a "Governing Law"

provision which states: "This Agreement, and all transactions

contemplated hereby, shall be governed by, construed and enforced

in accordance with the laws of the State of Washington."

[Agreement, Ex. 1 at ¶ 6.] The Amendment to Agreement memorialized

a similar choice-of-law provision, stating: "Governing Law.

Construction and enforcement of this Amendment shall be in

accordance with the laws of the state of Washington, exclusive of

its choice of law provisions." [Amendment to Agreement, Ex. 1 at

¶ 5.] The latest agreement selects Washington's substantive law

and excludes consideration of Washington's choice of law

provisions, and the latter Amendment to Agreement is also the

parties' creation of the escrow duties that give rise to

Plaintiff's present clams. Under Restatement § 187(a), supra, the

chosen state -- Washington -- has a substantial connection to the

transactions at issue, and under Restatement § 187(b) no state has a materially greater interest in the application of its law than does the chosen state of Washington, where the subject LLP Permit was sold and held in safekeeping, and where the LLP Permit was then impermissibly resold. Accordingly, Washington law will apply.

The Complaint, as noted, contained six counts. Count I alleged negligence; Count II alleged breach of contract; Count III alleged violation of the New Jersey Consumer Fraud Act, and subsequently the Washington Consumer Protection Act, as discussed below; Count IV alleged common law fraud; Count V alleged breach of fiduciary duty; and Count VI alleged breach of bailment duty. In this motion for default judgment, Plaintiff has pressed its claims under Count II (breach of contract); Count III (NJCFA or WCPA); and Count IV (common law fraud). Accordingly, the Court will not address Counts I, V, and VI which, for reasons that will become plain, are extraneous to the recoveries obtained on Counts II and III.

Count II: Breach of Contract. Under Washington law, a party asserting breach of contract must show "an agreement between the parties, a party's duty under the agreement, and a breach of that duty." Fidelity & Dep. Co. of Md. v. Dally, 148 Wash. App. 739, 745 (2009) (citing Lehrer v. Dept. of Social & Health Servs., 101 Wash. App. 509, 516 (2000) (additional citation omitted)). Here Plaintiff has proved the existence of the Agreement and the Amendment to the Agreement. Plaintiff has easily proved that

Defendant GSI has breached the Agreement and the Amended Agreement which it entered into. Among other things, GSI sold the LLP Permit to Plaintiff, received full payment under the Agreement, promised to hold the LLP Permit while awaiting instructions from Plaintiff for titling the LLP Permit, and breached the Agreement and Amended Agreement by reselling the LLP Permit, without knowledge or consent of Plaintiff, to an unrelated third party. Plaintiff was deprived of the benefit of its bargain, namely, ownership and titling of the LLP Permit. Plaintiff has proved damages equal to the amount it paid for the LLP Permit plus prejudgment interest from the time of breach in 2016 to the present date in accordance with Washington law. Such judgment will be entered on Count II in favor of Plaintiff and against both Graves & Schneider Intl., LLC and Matthew Schneider.

Defendant Schneider, although not a signatory to the Agreement or Amendment to the Agreement, has been shown to be the alter ego of Graves & Schneider Intl., LLC, prior to the year and including 2016, when Schneider committed the breach on behalf of GSI. Schneider was also the physical custodian of Plaintiff's LLP Permit and used that authority to improperly sell the LLP Permit by titling it into the name of the new third-party buyer and retaining the proceeds of the sale. Further, GSI as an entity in 2007 and Schneider as a principal of GSI received ample consideration in 2007 to carry out these continuing duties, which

Schneider breached both individually and as the alter ego for GSI in 2016.

We turn next to consider whether an award of prejudgment interest should be made. Under Washington law,

> [p]rejudgment interest is allowed in civil litigation at the statutory judgment interest rate, [WASH. REV. CODE §] 4.56.110, [WASH. REV. CODE §] 19.52.020, when a party to the litigation retains funds rightfully belonging to another and the amount of the funds at issue is liquidated, that is, the amount at issue can be calculated with precision and without reliance on opinion or discretion.

Mahler v. Szucs, 957 P.2d 632, 649 (Wash. 1998) (citing Prier v. Refrigeration Eng'g Co., 442 P.2d 621 (Wash. 1968)). Neither the Agreement nor the Amendment in this case provides for a specific rate of interest, nor does the judgment in this case relate to unpaid child support, tortious conduct, or to unpaid student loan debt. But this is a contractual case in which the funds were fixed at $210,000 and the LLP Permit was to be held in the temporary possession of Defendants unchanged in form and thus calculable with precision. Plaintiff does not seek recovery at the present time for increase in the value of the LLP Permit from 2007 to the present time, so no discretionary finding or opinion regarding value of the LLP Permit is brought into play. Therefore, interest is calculated from WASH. REV. CODE § 19.52.020. WASH. REV. CODE § 4.56.110. Under WASH. REV. CODE § 19.52.020(1),

> [a]ny rate of interest shall be legal so long
> as the rate of interest does not exceed the
> higher of: (a) Twelve percent per annum; or
> (b) four percentage points above the
> equivalent coupon issue yield (as published by
> the Board of Governors of the Federal Reserve
> System) of the average bill rate for twenty-
> six week treasury bills as determined at the
> first bill market auction conducted during the
> calendar month immediately preceding the later
> of (i) the establishment of the interest rate
> by written agreement of the parties to the
> contract, or (ii) any adjustment in the
> interest rate in the case of a written
> agreement permitting an adjustment in the
> interest rate. No person shall directly or
> indirectly take or receive in money, goods, or
> things in action, or in any other way, any
> greater interest for the loan or forbearance
> of any money, goods, or things in action.

WASH. REV. CODE § 19.52.020(1).

An award of prejudgment interest will be made from the time of the breach until the present date. The date of breach will be deemed to be January 1, 2016, since the precise date of Defendants' conversion and sale is not known, but the evidence proves it occurred between 2015 and 2016. Under Washington law, the rate of prejudgment interest is set at 12 percent, WASH. REV. CODE § 4.56.110; WASH. REV. CODE § 19.52.020(1). To award interest running back to the signing of the Agreement in 2006 or the Amendment in 2007 might confer an unwarranted windfall to Plaintiff because the breach at issue occurred in 2016, and Plaintiff attempted to make no use of the LLP Permit until 2017. The product of interest upon $210,000 from January 1, 2016 to present, calculated at twelve

percent (12%) simple interest, is $74,909.59. This sum will be added to Plaintiff's recovery for breach of contract, for a total of $210,000.00 plus $74,909.59, which is $284,909.59.

Count III: New Jersey Consumer Fraud Act (alternatively, Washington Consumer Protection Act). In Count III, Plaintiff sought to obtain recovery under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., because the prospect of recovery to a successful plaintiff is more generous than the corresponding Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq. ("WCPA"). However, as determined above, the NJCPA does not apply here because of New Jersey's recognition of the parties' election of Washington's law in their choice of law provisions. Plaintiff was therefore granted leave to seek recovery under the analogous WCPA, and supplemental briefing [Docket Items 17-1 and 17-3] addresses the WCPA, inter alia.

The WCPA was adopted to protect the public from unfair or deceptive acts or practices in trade or commerce and is to be liberally construed. Deegan v. Windermere Real Est./Ctr.-Isle, Inc., 391 P.3d 582, 587 (Wash. App. Div. 1, 2017). The WCPA differs from traditional common law standards of fraud and misrepresentation and replaced the standard of caveat emptor with the standard of fair and honest dealing. Id. Under § 19.86.020, the WCPA provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce

are hereby declared unlawful." WASH. REV. CODE § 19.86.020. The terms "trade" and "commerce" include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." WASH. REV. CODE § 19.86.010. Further, a "person" is defined to include "natural persons, corporations, trusts, unincorporated assertions and partnerships," WASH. REV. CODE § 19.86.010(1), and "assets" includes "any property, tangible or intangible, real, personal, or mixed, and wherever situate, and any other thing of value." WASH. REV. CODE § 19.86.010(3).

Plaintiff invokes the private cause of action for those who have suffered harm under the WCPA, as provided under WASH. REV. CODE § 19.86.090. In short, this statute provides: "Any person who is injured in his business or property by a violation of WASH. REV. CODE § 19.86.020 ... may bring a civil action in superior court ... to recover the actual damages sustained by him or her ... together with the costs of suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an award not to exceed three times the actual damages sustained: PROVIDED, that such increased damage award for violation of WASH. REV. CODE § 19.86.020 may not exceed twenty-five thousand dollars...." WASH. REV. CODE § 19.86.090.

Plaintiff qualifies as a "person" as it is a corporation. Plaintiff was injured in its business and property by being deprived of its LLP Permit, which it owned, and the rights to

conduct a fishing business for groundfish covered by that valuable permit. This injury was the result of Defendants' unfair or deceptive acts or practices in connection with the sale and safekeeping of Plaintiff's LLP Permit. The WCPA does not define "unfair or deceptive acts or practices," but Washington's courts have held that "[i]mplicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance," Nguyen v. Doak Homes, Inc., 140 Wash. App. 726, 734 (2007) (quoting Holiday Resort Cmty. Ass'n. v. Echo Lake Assocs., 134 Wash. App. 210, 226 (2006)).

Plaintiff has demonstrated that Defendant Schneider, individually and as alter ego for Graves & Schneider Intl, LLC, carried forth the trade of brokering or trading in commercial fishing permits, and he has knowingly committed a deceptive act or practice in connection with both the sale and resale of Plaintiff's LLP Permit. Schneider held or otherwise controlled the LLP Permit Plaintiff had purchased from GSI and paid for in 2007, wherein the agreements required GSI and Schneider as a principal and later alter ego of GSI to adhere to the promise of safekeeping of Plaintiff's license, as required by the Agreement and the Amendment to Agreement. Defendant Schneider himself received one-half of those proceeds from the 2007 sale to Plaintiff. Defendant Schneider thereafter knowingly misrepresented, in Schneider's unauthorized secret resale of Plaintiff's LLP Permit, that he had authority to

sell it in 2016, to set the price, retain the proceeds, and transfer it to a new buyer, all unknown at the time to the Plaintiff. Schneider not only misrepresented his ownership or other authority to sell the Plaintiff's LLP Permit, but he also misrepresented the transaction when later questioned by Captain Tasker on Plaintiff's behalf, as discussed above. Defendant Schneider's deceptive trade practice also included pretending to safeguard Plaintiff's LLP Permit when actually selling it as his or GSI's own property. He was in essence converting the property that had been entrusted to him and disposing of it for his own personal gain without authority from Plaintiff to do so, and without even giving notice that he intended to do so for any reason. Defendant Schneider thus failed to reveal numerous facts of material importance in his conversion and resale of Plaintiff's business property. <u>Deegan</u>, <u>supra</u>, 391 P.3d at 587.

All of this conduct by Defendant Schneider violated WASH. REV. CODE § 19.86.020 and caused damages to Plaintiff in the amount of $210,000.[1]

Thus, Plaintiff has proved (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injuring Plaintiff's business or property,

---

[1] Plaintiff does not pursue consequential damages at this time. [Letter from Brian McEwing, Docket Item 14.]

(5) causing damages, <u>see</u> <u>Behnke v. Ahrens</u>, 294 P.3d 729 (Wash. App. Div. 1, 2012).

In addition, the Court will impose the maximum additional damages permitted by the WCPA, namely $25,000, due to the egregious and unrepentant conduct to convert and sell Plaintiff's property, and to deter Defendant Schneider from misconduct in his trade or business in the future.

In addition, the Court will again impose prejudgment interest as permitted in Washington law for certain violations of the WCPA. <u>See</u> <u>e.g.</u>, <u>Pelascini v. Pace-Knapp</u>, 160 Wash. App. 1005 (2011) (affirming award of WCPA prejudgment interest where damages were "liquidated"). The <u>Pelascini</u> court explained that "[i]f the measure of damages does not require the exercise of discretion, the claim is liquidated." <u>Id.</u> (citing <u>Egerer v. CSR W., L.L.C.</u>, 116 Wash. App. 645, 653 (2003)). Thus in <u>Pelascini</u>, prejudgment interest was permitted to be added to a WCPA recovery for "lost equity damages" concerning the sale of a house, where those damages were calculable by using facts regarding loss of value that were not in dispute. <u>Id.</u> The present case, on the other hand, is a much more straight-forward application of the prejudgment statute to a WCPA recovery for a fixed amount requiring no exercise of discretion to determine, namely, $210,000.

Under the same logic and arithmetic set forth above (regarding prejudgment interest on contractual recovery), the Court will

award prejudgment interest on this successful WCPA recovery in the amount of $74,909.59.

The total WCPA award will thus be the sum of $235,000, plus interest of $74,909.59, for a sum of $309,909.59, to which the Court will add reasonable attorney's fees and costs of suit, addressed below.

D. **Common Law Fraud**

Although Plaintiff seeks recovery in common law fraud, it appears that the complaint and proofs presently fall short under Washington law. The Supreme Court of Washington has defined common law fraud as having nine essential elements, which must be established by clear, cogent, and convincing evidence:

> (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

Sigman v. Stevens-Norton, Inc., 70 Wash. 2d 915, 920 (1967) (quoted in North Pacific Plywood, Inc. v. Access Road Builders, Inc., 29 Wash. App. 228, 232-33 (1981)). While Defendant Schneider's misconduct would easily appear to satisfy elements (1) through (5), it is clear that Washington's common law of fraud requires that the misrepresentations be made to the person who relied on

the representation and suffered consequent damage. Here, Schneider's misrepresentations regarding ownership and availability for sale of Plaintiff's LLP Permit were made to the third party to whom he sold the item -- Mr. Desautel -- and perhaps also to NOAA's Marine Fisheries Commission which reflected the transfer and Desautel's new ownership on its 2017 registry website, above. But the deceptions were not made to Plaintiff, nor would Plaintiff ever have relied upon such nonsense because it knew the true fact that it owned the LLP Permit and had not authorized its transfer to anyone else.

Therefore, default judgment as to common law fraud will be denied without prejudice in the event Plaintiff elects to seek to cure these deficiencies or otherwise revive this claim.

### E. **Attorney's Fees and Costs**

Plaintiff is entitled to an award of reasonable counsel fees and costs. The Court has examined the Affidavit of Brian McEwing as to Counsel Fees and Costs [Docket Item 17-4] filed December 14, 2018, together with the attachments thereto, all submitted in compliance with L. Civ. R. 54.2(a) & (b) (D.N.J.). Plaintiff has itemized and explained all legal services rendered, for which Plaintiff was or will be billed, in connection with pursuing this successful case. Legal services were provided by attorneys Brian McEwing, Lisa Reeves, and Michael Schleigh, and paralegal services were rendered by Christine Nass. The total hours of legal services

incurred by Plaintiff through December 14, 2018, is 88.80 hours, and the resulting fee is $18,363.00. The Court finds that this time was efficiently and necessarily expended for the pre-drafting research, drafting, and filing of the Complaint, preparation, research and filing motions for default and for default judgment, briefing prior to and subsequent to the proof hearing, and attendance at the proof hearing. Further, the Court finds that the hourly rates of counsel are reflected in the written fee agreement with the client and are reasonable, namely $210.00 per hour for Michael Schleigh, $200.00 per hour for Brian McEwing, and $240.00 per hour for Lisa Reeves, as well as the paralegal rate of $110.00. Thus, counsel fees are approved iin the amount of $18,363.00.

Plaintiff is entitled to recover costs of suit. These are claimed in the McEwing Affidavit [Docket Item 17-4] in the sum of $660.00, but there may be an omission since the itemized costs [filing fees ($400.00), service fee ($125.00), and parking ($10.00)] total only $535.00. Thus, the sum of $535.00 in costs will be awarded.

The total award of fees and costs will be $18,898.00.

## V.  CONCLUSION

Accordingly, it is the Court's Verdict that Plaintiff, Atlantic Capes Fisheries, Inc., is entitled to default judgment against Defendants Graves & Schneider Intl, LLC and Matthew

Schneider, individually and as alter ego for Graves & Schneider Intl, LLC, as follows:

- **On Count II, for breach of contract, interest, attorney's fees and costs, the sum of $303,807.59.**

- **On Count III, for breach of the Washington Consumer Protection Act, including additional damages thereunder, plus interest, plus attorney's fees and costs, the sum of $328,807.59.**

Additionally, default judgment has been denied without prejudice as to common law fraud under Washington law in Count IV.

Because these recoveries are duplicative, with two legal theories redressing the same or similar conduct, Plaintiff cannot recover on both but will need to choose its remedy. Assuming Plaintiff is electing the higher amount, Judgment will be entered in favor of Plaintiff and against Defendants in the amount of $328,807.59.

The accompanying Judgment will be entered.


**December 21, 2018**      **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                            U.S. District Judge